BALL v. THE WABASH, ST. LOUIS & PACIFIC RAILWAY COMPANY, *Appellant.*

1. **Negligence :** COMMON CARRIER. A common carrier may limit his common law liability by special contract, but cannot exempt himself from the consequences of his own negligence.

2. **Common Carrier :** DELAY IN TRANSPORTATION. Plaintiff brought suit against defendant, a common carrier, for damages arising from its delay in the transportation of hogs, whereby the latter died from heat. The evidence showed that the delay occurred, that it was apparently unnecessary, that the weather was excessively warm, that the attention of the train men was more than once called to the suffering condition of the hogs, and the defendant failed at the trial to account for the delay. *Held* that the supreme court could not say

there was no evidence of negligence on defendant's part and that the finding for plaintiff thereon should be affirmed.

3. The Judgment in this case held not erroneous because of any error as to measure of plaintiff's damages.

*Appeal from Carroll Circuit Court.*—HON. J. M. DAVIS, Judge.

AFFIRMED.

*George S. Grover* and *H. S. Priest* for appellant.

(1) The contract being lawful, and under it the common law liability of defendant being limited, the burden of proof was upon plaintiff to establish negligence on the part of defendant. *Rice v. K. P. Ry.,* 63 Mo. 314; *Clark v. St. L., K. C. & N. Ry.,* 64 Mo. 440; *Sturgeon v. Same,* 65 Mo. 569; *Oxley v. Same,* 65 Mo. 629; *Dawson v. Same,* 76 Mo. 514; *R. R. v. Cleary,* 77 Mo. 634; *Cragin v. N. C. R. R.,* 51 N. Y. 61; *Penn v. B. & E. R. R.,* 49 N. Y. 204; *L. C. & L. R. R. v. Hedger,* 9 Bush. 645; *Squire, et al., v. N. Y. C. R. R.,* 98 Mass. 239; *A. R. Co. v. Brown,* Reporter, Sept. 3d, 1884, p. 319; *R. R. v. Spears,* 66 Ga. 485. No negligence on defendant's part was shown, and therefore, plaintiff was not entitled to recover. There was no evidence to support the finding of the court. *Sturgeon v. R. R., supra*; *Bankard v. B. & O. R. R.,* 34 Md. 197; *L., C. & L. R. R. v. Hedger, supra*; Lawson on Carriers, sec. 248. (2) Under the contract the damages were limited to the sum expended by plaintiff in purchase of food and water. It was, therefore, error for the court to render judgment in favor of the plaintiff for the full value of the animals. *S. & N. Ala. R. R. v. Heinlein,* 52 Ala. 606; *Squire v. N. Y. C. R. R., supra*; *Graves v. R. R.,* 17 Reporter 623; Lawson on Carriers, sec. 20; *Hart v. R. R.,* 7 Fed. Rep. 630; *Harvey v. R. R.,* 74 Mo. 546.

*Eads & Graham* and *Hale & Sons* for respondent.

(1) The fact of delay in the transportation of the hogs being established, the law, in the absence of any reason therefor on the part of the defendant, will impute it to its negligence. *Ketchum v. Express Co.*, 52 Mo. 390 ; *Levering v. Union etc. Co.*, 42 Mo. 88 ; *Reed v. R. R.*, 60 Mo. 206 ; *Shriver v. R. R.*, 31 Amer. Dec. 353 ; 2 Greenleaf Ev. sec. 219. (2) Where there is, as in this case, a special contract—and a loss admitted—it devolves upon the defendant to show not only that the cause of the loss was within the exceptions in the contract, but also that there was no negligence upon the part of the defendant. *Steel and Burgiss v. Townsend*, 37 Ala. 247 ; 2 Greenleaf, sections 219, 222 ; *Whiteside v. Russell*, 42 Mo. 88 ; 8 Watts & Sergeant, p. 44 ; 3 Parson's Contracts, pages 692, 693, 694 and 695 ; *Caldwell v. New Jersey Steamboat Co.*, 47 N. Y. 282 ; *Burnell v. N. Y. Central R. R. Co.*, 45 N. Y. 185. (3) The doctrine that a common carrier cannot exempt himself from losses occasioned by a neglect of that degree of care which the law casts upon him in his character of carrier is well established. *Levering v. Union Transportation Co.*, 42 Mo. 88 ; *Wolff v. the American Express Co.*, 43 Mo. 421 ; *Steele & Burgiss v. Townsend*, 37 Ala. 247 ; *Hill v. Sturgeon & Rawlings*, 28 Mo. 323 ; *Davidson v. Graham*, 2 Ohio St. 131 ; *Graham & Co. v. Davis & Co.* 4 Ohio St. 362 : *Michael v. N. Y. Central R. R. Co.*, 30 N. Y. 564 ; *School District v. Boston, Hartford & Erie R. R. Co.*, 102 Mass. 552 ; *Pennsylvania R. R. Co. v. Butler*, 57 Pa. 335.

EWING, C.—This suit was based upon a petition the material averments of which are as follows : *First.* That defendant was a corporation created under the laws of Missouri. *Second.* That defendant is a common carrier, and as such common carrier, on the 3d day of March, 1880, received of plaintiff, to be transported from South Carrollton, one car load of hogs to Metcalf, Moore & Company, consignees, National Stock Yards, East St. Louis, Illinois. *Third.* That in consideration that said

car load of hogs was to be by defendant, safely, carefully, and as speedily as possible, transported to the point aforesaid, plaintiff then and there paid to defendant the sum of $45.00 per car. *Fourth.* That defendant failed to transport and deliver said car load of hogs, safely, carefully, and with as great dispatch as possible, pursuant to the terms of said agreement; but, on the contrary, said hogs were negligently and carelessly delayed at the city of St. Louis, Missouri, for the space of three hours by defendant, and the weather being extremely warm, said hogs, to the number of fourteen, averaging in weight 290 pounds, and in all 4,060 pounds, and worth in the market at that time $4.35 per hundred, were overcome by heat, suffocated and died. *Fifth.* That plaintiff realized from the sale of said dead hogs the sum of $57.30. *Sixth.* That plaintiff, in consequence of the carelessness, negligence and delay of defendant, as aforesaid, was and is damaged in the sum of $176.61, less the sum of $57.30, so obtained for the hogs, to-wit: the sum of $119.31, for which amount he asks judgment, with six per cent. interest thereon from the 4th of March, 1881.

The answer of defendant was as follows: For further answer defendant avers, that on the 3d of March, 1880, it entered into a special contract in writing, with plaintiff, which contract was then and there duly executed by the parties thereto, in the words and figures following, to-wit:

This agreement, made the 3d day of March, 1880, between the Wabash, St. Louis & Pacific Railway Company, party of the first part, and David Ball, witnesseth: That the party of the first part will, in consideration of the agreements herein contained, forward for the party of the second part, the following freight, to-wit: 45 cattle, 55 hogs, from Carrollton to East St. Louis, at the rate of $43.00 per car, which is a reduced rate, expressly agreed upon by the parties hereto, and in consideration of which rate the party of the second part stipulates and agrees, as follows:

1.   The party of the second part agrees to take care of said freight while the same is being transported, and load and unload the same at his or their own risk and expense.

\*        \*        \*        \*        \*        \*

\*        \*        \*        \*        \*        \*

4.   It is agreed that the party of the first part shall not be responsible for any damage or injury sustained by any live stock from suffocation, while in said cars, or from any injury caused by overloading cars, or from fright of animals, or from the crowding of one upon or against the other.

5.   It is agreed that the party of the first part shall not be responsible for any delay caused by storm, fire, failure of machinery or cars, or from obstruction of track from any cause, or for any injury caused by fire from any cause whatever.

6.   The party of the second part, in consideration of the rate named in this contract, further agrees to water and feed said stock at his own or their risk and expense, while the same is in the cars of said first party, and in the event of any unusual delay or detention of said live stock, while on said trip, from any cause whatever, the party of the second part agrees to accept as full compensation for all loss or damage sustained in consequence of such delay, the amount actually expended by him, or them, in the purchase of food and water for the stock aforesaid.

7.   Defendant says that in consideration of the covenants therein contained, it was expressly agreed in said special contract that it should not be responsible for any damage or injury sustained by said live stock by suffocation while in said cars, or for any injury caused by overloading cars, or from fright of animals, or from the crowding of one upon or against the other.

8.   Defendant says that in consideration of the covenants therein contained, it was expressly agreed in said special contract that said plaintiff should water and feed

said live stock at his own risk and expense, while the same was being transported over the railroad of defendant, and that in event of any unusual delay or detention of said live stock while on said trip, from any cause whatever, said plaintiff should accept as full compensation for all loss or damage sustained in consequence of such delay, the amount actually expended by him in the purchase of food and water for the stock aforesaid.

9. Defendant says, that in consideration of the covenants therein contained, it was expressly agreed in said special contract that plaintiff should take care of said live stock while the same was being transported.

There were other conditions in the special contract, and other allegations in the answer, but they are not deemed material in the determination of the case and are, therefore, not set forth here. An appropriate reply was filed in which it was charged that the loss of the hogs "was caused by the negligence and carelessness of the defendant." Upon this state of pleadings the plaintiff offered evidence tending to prove the shipment and value of the hogs; their arrival at St. Louis Union Depot without unnecessary delay; the extreme heat of the weather; that they were delayed between two and three hours at the depot in St. Louis, surrounded by other cars and steam, etc., that cut off the air from them; that plaintiff several times notified defendant's train men whilst at the Union Depot, that his hogs were suffering, and they repeatedly answered that they would start in a few minutes; that on arrival at their destination at East St. Louis fourteen hogs were found to be dead; and that he sold the dead hogs at $1.50 and the live ones at $4.35 per hundred. Then there was evidence tending to prove notice and demand, etc. The defendant offered no evidence. The plaintiff asked no instructions. The defendant asked two instructions in the first of which, amongst other things, was that, if the court sitting as a jury shall find a written contract was entered into between plaintiff and defendant, whereby it was agreed that in the event of any

unusual delay or detention of the hogs while being transported, from any cause whatever, the plaintiff was to accept in full compensation for all loss by reason of such detention, the amount actually expended by him in the purchase of food and water for said hogs, then the burden of proof is upon plaintiff to show that the death of the hogs was occasioned by the negligence of the defendant; and unless he has so shown, the verdict must be for the defendant.

This instruction was given, as was, also, the second, which was solely upon the burden of proof as to negligence, and similar in that respect to the first, which fixed that burden on the plaintiff.    There was a verdict and judgment for the plaintiff from which the defendant appeals to this court.

I.    It has been well settled in this state and elsewhere that a common carrier may limit his common law liability by a special contract, but cannot exempt himself from the consequences of his own negligence. *Levering v. Union Trans. & Ins. Co.* 42 Mo. 88, and authorities there cited; also, *Oxley v. St. L., K. C. & N. Ry.*, 65 Mo. 629; *Clark v. St. L., K. C. & N. Ry.*, 64 Mo. 440; *Sturgeon v. St. L., K. C. & N. Ry.*, 65 Mo. 569.    The court below gave the instruction asked by the defendant containing a correct exposition of this principle, and upon hearing the evidence found for the plaintiff.    It is insisted that there was no evidence of negligence on the part of the defendant, and that, therefore, the finding was not justified under the evidence and instructions.    The law was laid down properly as asked by the defendant, and the court below having come to a conclusion upon the evidence we cannot interfere, unless there was no evidence whatever of negligence.    We will not say there was no evidence tending to prove negligence, when it is shown that delay occurred which apparently was unnecessary; when the weather was excessively hot; when the attention of the train men was called more than once to the suffering condition of the hogs; and especially when the

defendant was at liberty to show the reason for delay if any existed.

II. The next point insisted on by the appellant is the measure of damages, or rather the amount of the finding. The evidence showed that the dead hogs sold for $1.50 per hundred, and those not dead for $4.35. The finding of the court was the value at $4.35 per hundred after deducting the value at $1.50. The appellant insists that the amount of the finding must be limited by the sixth clause of the special contract above set out to-wit: "The amount actually expended by him or them, in the purchase of food and water." Any damage that might have accrued to the plaintiff's stock, on account of any circumstances, or on account of acts of the defendant, not the result of negligence on its part, would be limited by the special contract. In other words, the sixth article or clause of the special contract above quoted, limited the recovery of damages sustained by the plaintiff, to the "amount actually expended for food and water," unless such damage was caused by the negligence of the defendant. But the court having the evidence before it, upon the question of negligence, without the proof of which the plaintiff could not recover; and having found necessarily that the damage was caused by the negligence of the defendant, this court cannot undertake to say that finding was erroneous. The judgment below must be affirmed. All concur. Hough, C. J., absent.